UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

No. 2:25-CR-17

v.

Hon. HALA Y. JARBOU
Chief U.S. District Court Judge

JOSHUA BRIAN KUEHN,

Defendant.
_____________________________________/

# GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

Defendant has pleaded guilty to one count of sexual exploitation of a child in violation of 18 U.S.C. § 2251(a). The Court will sentence him on October 29, 2026. The presentence report calculates Defendant's offense level as 38 and his criminal history as I, for an advisory guideline range of 235 to 293 months' imprisonment. Defendant has objected to the scoring of the Repeat and Dangerous Sex Offender Against Minors enhancement under U.S.S.G. § 4B1.5(b). He seeks a below-guidelines sentence at the mandatory minimum of 15 years' imprisonment. The government believes the pattern enhancement applies and that a sentence in the range of 188 to 235 months is appropriate.[1]

[1] *See* R.55-1: Mem. of Law, *3.

## I. Factual Background

Defendant was introduced to Minor 1 in 2012 though an individual who was already sexually exploiting her. (R.45: FPSR, *14 ¶ 20.) Minor 1 told Defendant she needed help. (*Id.*) But rather than protect Minor 1 and report the other man, Defendant built a relationship with Minor 1 and used that trust to sexually exploit her too. (*Id.* at ¶¶ 20–21, *id.* at *7–14, ¶ 18.) Between January and June 2023, Defendant corresponded with Minor 1 by email. (*Id.* at *7–14, ¶ 18.) Many of the emails contain graphic sexual language directed at Minor 1; they also show Defendant was aware of her age. (*Id.*) And on multiple occasions, Defendant solicited and received visual depictions of Minor 1 engaged in sexually explicit conduct. (*Id.*)

Defendant was charged with one count of coercion and enticement of a child in violation of 18 U.S.C. § 2242(b) and four counts of sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a). (*Id.* at *3, ¶ 1.) He pleaded guilty to one count of violating § 2251(a). (*Id.* at *4 ¶ 9.)

## II. Presentence Report

After Defendant pleaded guilty, a probation and pretrial services officer prepared a presentence report (PSR) which calculates Defendant's total offense level as 38 based on the following factors:

| | | |
|---|---|---|
| Base offense level | 32 | § 2G2.1(a) |
| Sexual act | +2 | § 2G2.1(b)(2)(A) |
| Computer | +2 | § 2G2.1(b)(6)(B) |
| **Adjusted Offense Level** | **36** | |
| Pattern Enhancement | +5 | § 4B1.5(b)(1) |
| Acceptance of Responsibility | - 3 | § 3E1.1 |
| **Total Offense Level** | **38** | |

(*See id.* at *20–21, ¶¶ 42–53.) Defendant has a criminal history category of I and an advisory guideline range of 235 to 293 months' imprisonment. (*Id.* at *61.) The probation officer recommends a sentence at the bottom end of the guideline range. (*Id.*)

## III. Defendant's Objection to U.S.S.G. § 4B1.5(b)

Defendant has objected to the scoring of the five-level enhancement for Repeat and Dangerous Sex Offenders against Minors under § 4B1.5(b). This enhancement applies if the defendant's offense of conviction is a "covered sex crime" and the defendant "engaged in a pattern of activity involving prohibited sexual conduct." U.S.S.G. § 4B1.5(b). Defendant argues the enhancement should not apply because the guideline "excludes application in instances of trafficking, receipt, or possession," which he argues is all that occurred in this case. (R.48: Def's Sent. Mem., PageID.292.)

The Court should reject this argument and apply the enhancement. Defendant's position misreads the law, and his classification of the offense conduct mischaracterizes the undisputed record.

### A. Current treatment of the Commentary

The terms "covered sex crime" and "prohibited sexual conduct" are not defined in the Guideline text; they are defined in the Commentary. *See* U.S.S.G. § 4B1.5 & cmt. The first question is how to treat that commentary. Defendant's treatment of it is confusing: He cites the Commentary for the Guideline's purpose and relies heavily on its exclusionary language, but he also discusses the developing caselaw

around its weight and argues its definitions are "ambiguous and not entitled to deference." (*See* R.48: Def's Sent. Mem., PageID.288–92 (citing, *e.g.*, *United States v. Havis*, 907 F.3d 439, 442-44 (6th Cir. 2018)).)

It's true that the legal landscape surrounding the Commentary has shifted in recent years. But recent cases from the Court of Appeals state the current law in this circuit. District courts apply *Auer* deference to the Guidelines Commentary, deferring to the Sentencing Commission's interpretation of its own Guidelines where the guideline text is genuinely ambiguous. *United States v. Prather*, 138 F.4th 963, 974–75 (6th Cir. 2025), *cert. denied*, 146 S. Ct. 2671 (2026) (citing *Auer v. Robbins*, 519 U.S. 452 (1997)).

A Guideline is "genuinely ambiguous" only if it remains unclear "after the court has resorted to all the standard tools of interpretation' to eliminate that ambiguity." *United States v. Wala*, 166 F.4th 583, 593 (6th Cir. 2026) (cleaned up). And even so, deference to the Commentary is only due where the Commentary "falls within the Guideline's zone of ambiguity." *Id.* (cleaned up). That is, "[c]ourts may not defer to the Guidelines Commentary when no reasonable person would define the relevant Guidelines language in the way that the commentary commands." *Id.* (cleaned up). "Guidelines commentary that *adds* to the Guidelines, rather than *interprets* them, is not entitled to judicial deference." *Prather*, 138 F.4th at 975 (citing *United States v. Havis*, 927 F.3d 382, 386–87 (6th Cir. 2019) (per curiam) (en banc)). Conversely, where the Guideline is ambiguous and the Commission's interpretation falls within the zone of ambiguity, the Sixth Circuit treats the Commentary as "authoritative."

*United States v. Knight*, No. 22-5919, 2023 WL 5338637, at *4 (6th Cir. Aug. 18, 2023) (quoting *United States v. Hollon*, 948 F.3d at 753, 757 (6th Cir. 2020)).

**B. Application to U.S.S.G. § 4B1.5(b) and Defendant's Conduct**

While the term "covered sex crime" is not defined in the Guideline test, according to the Commentary, it includes "an offense, perpetrated against a minor, under . . . Chapter 110 of [Title 18], not including trafficking in, receipt of, or possession of child pornography." U.S.S.G. § 4B1.5 & cmt. n.3. "[P]rohibited sexual conduct" is defined in the Commentary to include "the production of child pornography," and "any offense described in 18 U.S.C. § 2426(b)(1)(A)," *id.*, which incorporates offenses under Chapter 110 as well as offenses under Chapter 117. Like "covered sex crime," it excludes "receipt or possession of child pornography"; it covers trafficking of child pornography only for offenders with prior felony convictions. *Id.* at cmt. n.4(a).

A panel of the Sixth Circuit has already addressed the proper interpretation of "prohibited sexual conduct" under the post-*Havis* framework. In *Knight*, the Court of Appeals held that "prohibited sexual conduct" was not ambiguous, so there was no need to turn to the Commentary. 2023 WL 5338637, at *4. Looking to dictionaries, the court defined the ordinary meaning of the phrase as "personal behavior associated with sex that is forbidden by law." *Id.* at *3. And it held that the plain meaning covered the defendant's conduct, which included "request[ing] the production of sexually explicit photos of minors, and [seeking] to livestream sessions involving minors engaged in sexually explicit behavior. *Id.* at *4. While the court found resort

to the Commentary unnecessary, it further observed that the Commentary's definition, which encompassed the Chapter 117 offense of "attempted enticement of a minor," *id.* at *5 (citing 18 U.S.C. § 2422(b)), and the Chapter 110 offense of "attempted production of child pornography," *id.* (citing 18 U.S.C. § 2251(a)), was consistent with the Guideline's plain meaning, *id.* at *4–5.

Here, Defendant was charged with one count of coercion and enticement of child under 18 U.S.C. § 2242(b) and three counts of sexual exploitation of a child under § 2251(a) in addition to the violation of 18 U.S.C. § 2251(a) that he pleaded guilty to. The PSR outlines the conduct that supports those further charges in detail. (R.45: FPSR, *7–14 ¶ 18.) In summary, it involved the repeated solicitation of sexually explicit material from Minor 1, and effusive praise and encouragement when she complied. (*Id.*; *see also id.* at *9, 11, 12 (discussing Skype calls)). The only difference from the defendant in *Knight* is that Mr. Kuehn was successful in his requests. Thus, under either the plain meaning or the definition in the Commentary, he engaged in a pattern of "prohibited sexual conduct" with Minor 1.

It is not clear if Defendant is also contesting whether his offense of conviction is a "covered sex crime." His memorandum twice states that ""covered sex crime" includes "the offense of conviction here, 18 U.S.C. § 2251(a)," (*See* R.48: Def's Sent. Mem., PageID.289, 291). But he also cites exclusions in the Commentary for receipt and possession. (*Id.*)

In any event, Defendant's conviction under § 2251(a) qualifies. While *Knight* also involved a conviction under § 2251(a), the defendant there did not argue that

was not a "covered sex crime," so the Court of Appeals did not address this issue. *See* 2023 WL 5338637, at *6. But another district court in this circuit conducted an extensive analysis and concluded (1) that "covered sex crime" as stated in the Guideline text is genuinely ambiguous, and (2), that the Commission's definition in the Commentary is entitled to deference. *See United States v. Allen*, No. 3:23-CR-33-TAV-DCP-1, 2025 WL 3162337, at *16–17 (E.D. Tenn. Nov. 12, 2025). The *Allen* court explained that while "sex crime" could likely be defined unambiguously as a "crime of a sexual nature," the inclusion of the word "covered" created genuine ambiguity. *Id.* at *17. It found that the Commentary provided a "clear answer" to ambiguity, and after considering the factors in *Kisor v. Wilkie*, 588 U.S. 558 (2019), determined that the 'character and context' of the Commission's interpretation . . . . entitle[d] it to controlling weight." *Id.* (citing *United States v. Phillips*, 54 F.4th 374, 385–86 (6th Cir. 2022)). The analysis in *Allen* is persuasive and in line with Sixth Circuit precedent. The Commentary clarifies rather than expands the definition in the Guideline text for § 4B1.5, so it is "authoritative." *Knight*, 2023 WL 5338637, at *4.

*Allen* went on to apply the § 4B1.5 enhancement where the offense of conviction was under § 2251, which it described as "production of child pornography." 2025 WL 3162337, at *18. That characterization is consistent with the Sixth Circuit's description in *Knight* and with cases from other circuits. *E.g.*, *United States v. Hall*, 780 F. App'x 710, 711 (11th Cir. 2019); *United States v. Hoover*, 95 F.4th 763, 774 (4th Cir. 2024). And that characterization makes sense, as the offense involves, *inter*

*alia,* using, persuading, inducing, or enticing a minor to engage in "any sexually explicit conduct for the purpose of *producing* any visual depiction of such conduct." 18 U.S.C. § 2251(a) (emphasis added). By contrast, Sections 2252 and 2252A cover the receipt, distribution, sale, or possession of materials depicting minors engaged in sexually explicit conduct. 18 U.S.C. §§ 2252, 2252A.

Section 2251(a) falls within Chapter 110 and is not subject to the Commentary's exclusion; it qualifies as a "covered sex crime."

That leaves Defendant's argument that "all that occurred here is the receipt and retention of pornography." (*See* R.48: Def's Sent. Mem., PageID.291.) Defendant omits the key modifier – this wasn't just *any* pornography; it was material depicting a *minor* engaged in sexually explicit conduct. More importantly, "receipt and retention" is far from all that Defendant did. The PSR contains pages of emails Defendant sent Minor 1. (R.45: FPSR, *7–14 ¶ 18.) The messages are graphic: On one occasion, Defendant asked Minor 1 to take her underwear off and pleasure herself so that he could see and hear her. (*Id.* at *8.) When Minor 1 sent Defendant content with her underwear on, he again requested that she remove "the bottoms" so he could see "ALL of MY baby!" (*Id.*; *see also* *9 ("You should make me a second half to this…*but take it allllll off!*").) On another occasion, Defendant messaged Minor 1 "Don't forget about me tonight??!?!?!?!?" (*Id.* at *10.) And when she complied, Defendant responded, "Holy fuck!!"; said he'd make Minor 1 his wife; and called her beautiful. (*Id.*)

The content of Defendant's emails substantially undermines his assertion that he "did not direct what the images should include." (*See* R.48: Def's Sent. Mem., PageID.292.) And his claim that "he did not solicit any when he finally accepted [the victim] was a minor" strains credulity. Minor 1 made clear that she was at most 17 on February 2, 2013. (R.45: FPSR, *9.) By March 14, Defendant was referring to her as "a 16 year old." (*Id.* at *10.) Less than a week later, he explained that "[p]utting effort into snapping a few nudies for me until we can be physical should be fun and light hearted." (*Id.* at *11.) And after declaring, "I'm in love with a 16 year old girl," in April 2013, Defendant sent Minor 1 a highly explicit description of a "dream," then asked her to show her "little ass," and complained, "what ever happened to prancing around naked taking photos just for me?" (*Id.* at *12–13.)

Defendant's pattern of conduct – spanning months – is exactly the type of repeated exploitation that the § 4B1.5 enhancement is designed to cover. The enhancement applies to Defendant and should be scored.

## IV. Defendant's Request for a Variance

Defendant seeks a variance to the mandatory minimum sentence of 15 years' imprisonment. He cites certain aspects of his offense conduct, his post-offense behavior, and his medical history, including significant childhood trauma. The government is opposed to Defendant's request. A sentence in the range of 188 to 235 months is sufficient but not greater than necessary to achieve the purposes of sentencing. (*See* R.55-1: Mem. of Law, *3.)

Beginning with the offense conduct, the guidelines reflect that Defendant repeatedly solicited and received media involving a minor engaging in sexually explicit conduct. Throughout his sentencing memorandum, Defendant seeks to minimize his conduct. The government has already addressed his unfounded assertion that he merely received and retained child pornography. But to reiterate, Minor 1 did not "simply provide[] images that she had made for other reasons or for other people." (R.48: Def's Sent. Mem., PageID.292.) Defendant promised to make her his wife and asked her to move in with him. (R.45: FPSR, *9.) He pressured her to remove her underwear and told her to touch herself. (*Id.* at *8.) He asked her to moan his name, and she called him "Josh" in one of the videos recovered in this case. (*Id.* at *7, 10.) There are also references in the emails to live Skype calls. (*Id.* at *9, 11, 12.) And if anything, the emails show that Defendant wanted to make sure he had exclusive access to the content he repeatedly urged Minor 1 to produce. (*See id.* at *11–14.)

Defendant also characterizes the conduct as occurring over "a relatively short period of time." (R.48: Def's Sent. Mem., PageID.296.) But the government does not agree that six or seven months (plus persistent requests for CSAM until June 2013) is a short period of time for a vulnerable and exploited teenager. Moreover, Defendant's conduct with Minor 1 was pervasive. The PSR shows him contacting Minor 1 multiple times a day, and nearly every week between January and March

2013. And while the PSR notes five instances where Minor 1 sent Defendant explicit content, the emails point to additional occasions as well.[2]

In terms of the Defendant's history and characteristics, the government has reviewed his filings and the information in the PSR, and it does not dispute that the Defendant suffers from substantial health issues and the lasting effects of being sexually abused as a young child. But these mitigating factors can be addressed within the government's suggested range. And while Defendant has serious health issues, this is not the sort of crime where those issues would limit his ability to recidivate, particularly given the modern tools available to those who wish to mask their identities on the internet.[3] Finally, the government notes that while many of Defendant's letters of support describe a willingness to help others, when Defendant encountered a young girl who had already been exploited by one adult, he took advantage of her increased vulnerability to gratify his own sexual desires.

The guidelines appropriately reflect the serious nature of the offense conduct and provide just punishment. And Defendant's continued minimization points to a need for a sentence that will provide sufficient deterrence, promote respect for the law, and protect the public.

[2] The government likewise does not agree that the enhancement for sexual contact "overstates the offense behavior," especially given that Defendant requested that type of contact be shown. (R.48: Def's Sent. Mem., PageID.296.)

[3] Defendant has shown a propensity to misrepresent his identity online (R.45: FPSR, *23–26 ¶ 58; *46–48 ¶¶ 110–11.)

## V. Conclusion

For the reasons stated, the government respectfully requests that the Court apply the pattern enhancement under 4B1.5 and impose a sentence in the range of 188 to 235 months' imprisonment.

Respectfully submitted,

TIMOTHY VERHEY
United States Attorney

Date: October 22, 2026

*/s/ Hanna L. Rutkowski*
HANNA L. RUTKOWSKI
Assistant United States Attorney
1930 U.S. 41 W., 2nd Floor
Marquette, MI 49855
(906) 226-2500
hanna.rutkowski@usdoj.gov